07-0757-cv

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: May 14, 2008)                    Decided: August 19, 2008)

Docket No. 07-0757-cv

———————————————————————

IN RE: NORTEL NETWORKS CORP. SECURITIES LITIGATION

———————————————————————

Before SOTOMAYOR, WESLEY and WALLACE, *Circuit Judges.*[*]

———————————————————————

Appellant Milberg Weiss & Bershad LLP ("Milberg") appeals from a judgment of the United States District Court for the Southern District of New York (Berman, J.), awarding attorneys' fees to class counsel, following the settlement of a private securities class action, in the amount of 3% of the class's recovery rather than the requested 8.5%. We conclude that Milberg has waived its argument that the Private Securities Litigation Reform Act altered the fee-award scheme for cases covered by the Act by failing to present this argument to the district court. Further, we hold that the district court did not abuse its discretion in awarding a reasonable fee under our established precedent.

AFFIRMED.

SAMUEL ISSACHAROFF, New York, New York,
*for Appellant.*

_____

[*] The Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

PER CURIAM:

Appellant Milberg Weiss & Bershad LLP ("Milberg") appeals from a January 29, 2007 judgment of the United States District Court for the Southern District of New York (Berman, J.), awarding attorneys' fees to class counsel, following the settlement of a private securities class action, in the amount of 3% of the class's recovery rather than the requested 8.5% award. Milberg argues that the district court erred by disregarding the purportedly altered fee-award scheme under the Private Securities Litigation Reform Act of 1995 ("PSLRA") pursuant to which Milberg's negotiated fee with the lead plaintiff would have been presumptively reasonable. We conclude that Milberg has waived this argument by failing to present it to the district court. Further, we hold that the district court did not abuse its discretion in applying our precedent and awarding a 3% fee (representing roughly two times the value of hours actually worked by counsel). We therefore affirm the district court's judgment.

## BACKGROUND

This case arises out of claims by a class of plaintiffs who argue that the defendant, Nortel Networks Corporation ("Nortel"), knowingly and recklessly issued false and misleading statements and engaged in various accounting manipulations causing its stock price to be inflated between October 24, 2000 and February 15, 2001.[1] Following several years of litigation, the district court gave final approval to a class settlement of $438,667,428 in cash plus 314,333,875 shares of Nortel common stock valued, at the time of settlement, in excess of $700,000,000 ("Nortel I"). As part of the same overall settlement, Nortel settled a separate action involving

---

[1] The plaintiff class consisted of purchasers of stock or call options and sellers of put options on Nortel stock between October 24, 2000 and February 15, 2001.

similar securities claims by another class of plaintiffs for a later time period ("Nortel II"). The

Nortel II class settled for common stock valued in excess of $700,000,000 as well as for

$370,157,428 in cash—approximately $68.5 million less in cash than the Nortel I settlement.

The district court (Preska, J.) in Nortel II awarded attorneys' fees amounting to 8% of the class

recovery, while the district court (Berman, J.) in Nortel I awarded fees amounting to 3% of the

class recovery. This appeal involves only the award of attorneys' fees to class counsel for the

Nortel I settlement.

Pursuant to the provisions of the PSLRA, the district court selected Ontario Public

Service Employees' Union Pension Trust Fund ("OPTrust") as the lead plaintiff for the Nortel I

litigation.[2] OPTrust manages over $12 billion in pension funds for employees of the Province of

Ontario and claimed to have lost roughly $33 million in its Nortel stock investment as a result of

Nortel's false statements and improper accounting. As part of its statutory duties as lead

plaintiff, OPTrust selected Milberg as its lead counsel with the district court's approval. OPTrust

entered into a retainer agreement with Milberg, which provided, among other things, that Milberg

had to submit any fee application for OPTrust's approval before submitting that application to

the court. However, no specific fee schedule was included as part of that agreement.

---

[2] Under the PSLRA, the district court must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i). This provision was intended to increase the likelihood that large institutional investors and other class members with significant financial stakes in the litigation would serve as lead plaintiff in securities class actions. See H.R. Rep. No. 104-369, at 34 (1995). The lead plaintiff is then charged with selecting and retaining class counsel, with the approval of the court. 15 U.S.C. § 77z-1(a)(3)(B)(v). Prior to the PSLRA, the first lawsuit filed generally determined who served as the lead plaintiff, and courts traditionally appointed class counsel on a "first come, first serve" basis. See H.R. Rep. No. 104-369, at 33.

After reaching a settlement with Nortel, OPTrust and Milberg agreed to a fee award of 8.5% of the settlement to be paid in a mixture of cash and stock. Class members had been previously notified, as part of the settlement notice, that Milberg could receive a fee of up to 10% of the recovery, but this fee was eventually negotiated down by OPTrust. In a detailed affidavit to the district court, OPTrust "strongly support[ed]" the 8.5% award as "fair and reasonable" and explained why the settlement provided "a recovery that is both excellent and historic in magnitude" for the class members.

After conducting an independent analysis of the factors laid out by this court in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), the district court concluded that the requested 8.5% fee was excessive and instead concluded that a 3% fee was a fair and reasonable award.[3] Under the first *Goldberger* factor—the time and labor expended—the district court accepted as accurate Milberg's lodestar of $16.656 million based on roughly 50,000 hours of attorney and paralegal time.[4] The district court found under the second and third factors—the complexities and risk involved in the litigation—that the present case did not differ significantly from other large securities litigations and further found that a 3% award, which amounted to a lodestar multiplier of 2.04, fairly compensated for these factors. On the fourth factor—the quality of representation—the district court found that Milberg was experienced and qualified, observing that it had successfully defended a motion to dismiss and

---

[3] The district court also granted Milberg's request for $3.75 million in expenses.

[4] A "lodestar" is calculated by multiplying the number of hours reasonably billed to the class by the appropriate hourly rate. A district court, in its discretion, may award fees higher than the lodestar by applying a multiplier based on factors such as the riskiness of the litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005).

obtained class certification. With respect to the fifth factor—the requested fee in relation to the settlement—the district court found that a 3% fee was consistent with fees granted in similar cases, noting several cases that had approved lodestar multipliers in the range of 2.29 to 3.5. As to the final factor—public policy considerations—the district court found that a 3% award (amounting to approximately two times the value of hours actually worked) properly balanced the policy goals of encouraging counsel to pursue meritorious securities litigations while protecting against excessive fees. Therefore, the district court concluded that a fee award of approximately $34 million, or 3% of the total recovery, was fair and reasonable.[5] This appeal ensued.

## DISCUSSION

### I. Waiver

Before addressing the district court's fee award in this case, we first discuss Milberg's argument, based upon Third Circuit precedent, that the PSLRA altered the fee-award scheme for cases covered by the Act, requiring courts to consider fees agreed upon by PSLRA lead plaintiffs as presumptively reasonable. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 199-201 (3d Cir. 2005) ("*Cendent II*"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 282-83 (3d Cir. 2001). Having reviewed Milberg's filings and oral presentation to the district court regarding this issue, we conclude that Milberg has waived this argument by failing to present it below. "'[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.'" *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) (quoting

---

[5] Because the price of Nortel's stock has dropped since the district court approved the settlement, the value of both the class's recovery and fees to class counsel have since decreased.

*Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994)); *see also Wal-Mart Stores, Inc.*, 396

F.3d at 124 n.29 ("The law in this Circuit is clear that where a party has shifted his position on

appeal and advances arguments available but not pressed below, . . . waiver will bar raising the

issue on appeal." (internal quotation marks and citation omitted)).  Milberg never argued to the

district court that the PSLRA altered the fee-award scheme in any way or created a presumption

of reasonableness for fees agreed upon by the lead plaintiff.  It did not even cite the Third Circuit

authority upon which it now primarily relies.  Milberg's only argument resembling the one that it

now presents was that the district court should give "great deference" to OPTrust's view that the

negotiated fee was fair and reasonable because OPTrust was an institutional investor with a

significant monetary interest in the settlement.  This argument was not sufficient to preserve the

issue for appeal.

We recognize that this court has discretion to consider arguments waived below because

our waiver doctrine is entirely prudential.  *See Bogle-Assegai,* 470 F.3d at 504.  Although we

may exercise discretion to consider waived arguments where necessary to avoid a manifest

injustice, "the circumstances normally 'do not militate in favor of an exercise of discretion to

address . . . new arguments on appeal' where those arguments were 'available to the [parties]

below' and they 'proffer no reason for their failure to raise the arguments below.'" *Id.* (quoting

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005)) (alteration and omission in

original).

Under the circumstances of this case, we decline to exercise our discretion where Milberg

has offered no reason for its failure to raise this argument to the district court.  Moreover, our

refusal to address this issue will not result in any injustice.  As we discuss *infra*, the district court

carefully applied our precedent and weighed the relevant considerations before determining a fee. In addition, having examined the PSLRA and its legislative history, we have found nothing indicating a congressional intent for courts to consider the fees agreed upon by PSLRA lead plaintiffs as presumptively reasonable. Indeed, the only PSLRA provision related to attorneys' fees places an obligation on district courts to ensure independently that fees are reasonable: "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."[6] 15 U.S.C. § 78u-4(a)(6).

We leave open the question of how much weight should be given to fees agreed upon by PSLRA lead plaintiffs. We expect, however, that district courts will give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the

---

[6] The legislative history further clarifies:

> The House and Senate heard testimony that counsel in securities class actions often receive a disproportionate share of settlement awards.
>
> Under current practice, courts generally award attorney's fees based on the so-called "lodestar" approach—i.e., the court multiplies the attorney's hours by a reasonable hourly fee, which may be increased by an additional amount based on risk or other relevant factors. Under this approach, attorney's fees can constitute 35% or more of the entire settlement awarded to the class. The Conference Committee limits the award of attorney's fees and costs to counsel for a class in new section 27(a)(6) of the 1933 Act and new section 21D(a)(6) of the 1934 Act to a reasonable percentage of the amount of recovery awarded to the class. By not fixing the percentage of fees and costs counsel may receive, the Conference Committee intends to give the court flexibility in determining what is reasonable on a case-by-case basis. The Conference Committee does not intend to prohibit use of the lodestar approach as a means of calculating attorney's fees. The provision focuses on the final amount of fees awarded, not the means by which such fees are calculated.

H.R. Rep. No. 104-369, at 36 (footnote omitted).

settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable. In many cases, the agreed-upon fee will offer the best indication of a market rate, thus providing a good starting position for a district court's fee analysis. *See Goldberger*, 209 F.3d at 52 (explaining "that market rates, where available, are the ideal proxy for [class counsel's] compensation"); *cf. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008) (explaining that fee awards should approximate market rates). Yet Milberg did not raise this argument below. Given this failure, and the district court's careful consideration of the *Goldberger* factors, we do not decide today precisely how much weight to accord a negotiated fee.

## II. Reasonableness of the Fee Award

Having determined that Milberg waved its PSLRA-based challenge to the fee award, we now turn to its challenge to the reasonableness of that award.

We will not overturn a district court's award of attorneys' fees "absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding." *Goldberger*, 209 F.3d at 47. "Indeed 'abuse of discretion'—already one of the most deferential standards of review—takes on special significance when reviewing fee decisions" based on our recognition that the district court, being intimately familiar with the case, is in a far better position to make such determinations than an appellate court. *Id.* at 47-48.

In determining reasonable attorneys' fees in common fund cases, a district court should be guided by the six *Goldberger* factors. As described earlier, the district court below carefully weighed each of these factors and concluded that an award of 8.5% of the recovery was excessive. The court found instead that a 3% award was fair and reasonable under the circumstances.

Milberg argues that the district court abused its discretion in part because it awarded a fee significantly below those awarded in other cases where we have upheld higher percentage fees and higher lodestar multipliers.[7]  Milberg also argues that the district court erred by not using the 8% Nortel II award as a "benchmark," especially because, according to Milberg, Nortel II presented fewer litigation risks than Nortel I.  We have little doubt that a 3% fee award, with a 2.04 lodestar multiplier, is toward the lower end of reasonable fee awards, and we are troubled by the district court's failure to discuss Nortel II and why it believed the fee award here to be more reasonable.  But the question before us is not whether we would have awarded a different fee, but rather whether the district court abused its discretion in awarding this fee.  Milberg points to no case where we have held that a district court abused its discretion in awarding a fee that is too low.  Given the district court's careful analysis of the *Goldberger* factors, we conclude that the fee award here does not fall outside the bounds of the district court's discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[7] Milberg also asserts that there is a disconnect between the district court's finding that the complexity and risks faced by the plaintiffs in this case were similar to other large securities litigations and the district court's earlier statement that this case involved several complex and difficult issues.  We find no contradiction between these statements, however, because large securities litigations often involve complex issues.  The district court only found that the difficulties of the issues here were standard for this type of case and no greater than that faced by other plaintiffs in large securities actions.