07-5580-cv
Nichole McDaniel, et al. v. County of Schenectady, et al.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2008

Argued: May 13, 2009                    Decided: February 16, 2010

Docket No. 07-5580-cv

—————————————————————

NICHOLE MARIE MCDANIEL, Individually and on behalf of a class of others similarly situated, LESSIE LEE DAVIES, Individually and on behalf of a class of others similarly situated,

*Plaintiffs-Appellants*,

-v.-

COUNTY OF SCHENECTADY, HARRY BUFFARDI, Both individually and in his official capacity as Sheriff of the County of Schenectady, GORDON POLLARD, Both individually and as Undersheriff of the County of Schenectady, ROBERT ELWELL SR., Both Individually and as Major in the Schenectady County Sheriff's Department,

*Defendants-Appellees*.

—————————————————————

Before:        WALKER, LIVINGSTON, *Circuit Judges*, KAPLAN,[*] *District Judge*.

Plaintiffs-Appellants appeal from an order of the United States District Court for the Northern District of New York  (Sharpe, *J.*), approving the settlement of a class action arising from alleged violations of their constitutional rights, but awarding less than the requested fee to their attorneys.

---

[*] The Honorable Lewis A. Kaplan, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

We conclude that the district court did not abuse its discretion by declining to award attorneys' fees using a percentage-of-fund approach, in the extent of its reliance on our decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110 (2d Cir. 2007), *superseded by* 522 F.3d 182 (2d Cir. 2008), or in its application of the reasonableness factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).

Affirmed.

ELMER ROBERT KEACH, III, Law Office of Elmer Robert Keach III, PC, Amsterdam, New York, JASON J. ROZGER, BRUCE E. MENKEN, Beranbaum, Menken, Ben-Asher & Bierman LLP, New York, NY, JONATHAN WATSON CUNEO, Cuneo, Gilbert & LaDuca, Washington D.C., GARY E. MASON, The Mason Law Firm, Washington D.C., *for Plaintiffs-Appellants*.

WILLIAM G. GREAGAN, Goldberg Segalla, LLP, Albany, NY, *for Defendants-Appellees*.

PHILIP K. HOWARD, JENNIFER O. FARINA, Covington & Burling LLP, New York, NY, *as Amicus Curiae in support of Defendants-Appellees*.

LIVINGSTON, *Circuit Judge*:

Plaintiffs-Appellants appeal from an order of the United States District Court for the Northern District of New York (Sharpe, *J.*), approving the settlement of a class action arising from alleged violations of the their constitutional rights, but awarding less than the requested fee to their attorneys from the common fund established by the settlement. Rather than base its attorneys' fees calculation on a percentage of the fund, the district court elected to calculate fees using a variant of the lodestar method described by this Court in *Arbor Hill Concerned Citizens Neighborhood Association v.*

*County of Albany*, 493 F.3d 110 (2d Cir. 2007), *superseded by* 522 F.3d 182 (2d Cir. 2008). Considering the factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the district court concluded that counsel were adequately compensated by an award of fees that reflected their normal hourly rates. Because we conclude that the district court did not abuse its discretion in making these determinations, we affirm.

## BACKGROUND

On October 19, 2001, this Court issued its decision in *Shain v. Ellison*, 273 F.3d 56 (2d Cir. 2001), in which it determined, relying on its previous decisions in *Wachtler v. County of Herkimer*, 35 F.3d 77 (2d Cir. 1994), *Walsh v. Franco*, 849 F.2d 66 (2d Cir. 1988), and *Weber v. Dell*, 804 F.2d 796 (2d Cir. 1986), that it was clearly established that a corrections officer may not perform a strip search of a pre-trial detainee charged only with a misdemeanor absent an individualized, reasonable suspicion that the detainee possesses contraband or weapons. *See Shain*, 273 F.3d at 59. In the wake of this decision, a number of lawsuits challenging strip search policies were commenced throughout New York State. *See, e.g.*, Complaint, *McBean v. City of New York*, No. 02-cv-5426 (S.D.N.Y. July 15, 2002); Complaint, *Kelsey v. Schoharie County, New York*, No. 1:04-cv-00299 (N.D.N.Y. Mar. 19, 2004); Complaint, *Pritchard v. County of Erie*, No. 04 cv 0534 (W.D.N.Y. July 21, 2004).

On June 29, 2004, Appellants Nichole Marie McDaniel and Lessie Lee Davies filed a complaint in the United States District Court for the Northern District of New York on behalf of themselves and others similarly situated, asserting that the Schenectady County Sheriff's Department maintained a policy, implemented by senior officers including Appellees Harry Buffardi, Gordon

Pollard, and Robert Elwell, of strip-searching all individuals who were incarcerated at the Schenectady County Jail and placed in jail clothing, regardless of the crime with which they were charged. The complaint sought compensatory and punitive damages, as well as declaratory and injunctive relief. The parties vigorously litigated this action for a period of more than three years, with various attorneys for the plaintiff class spending more than 1000 hours working on the case.

Throughout the course of the litigation, Appellees maintained that the class members were merely "required to change into jail uniforms in the presence of a corrections officer of the same sex" and that the Schenectady County Jail had no formal policy of strip searching all detainees. Ultimately, however, they agreed to the terms of a settlement, pursuant to which Appellees agreed to substantial injunctive relief and the creation of a settlement fund totaling $2.5 million. The settlement agreement, signed on July 31, 2006, indicated that Appellants' counsel would petition the court for an award of attorneys' fees "in the amount not to exceed 26%" of the total settlement fund, and also provided for the separate reimbursement of administrative expenses.

During the litigation of this case, counsel for Appellants also acted as counsel for the plaintiffs in two other actions – each initiated prior to the filing of the complaint in this case – alleging that other counties in New York maintained impermissible strip search policies. *See* Complaint, *Kahler v. Rensselaer County*, No. 1:03-cv-1324 (N.D.N.Y. Oct. 31, 2003); Complaint, *Mariott v. County of Montgomery*, No. 5:03-cv-00531 (N.D.N.Y. Apr. 29, 2003). In *Kahler*, the parties reached a settlement in March 2004, about three months prior to the initiation of the instant suit, which the district court ultimately approved in substantial part. *See* Motion to Certify Class and for Preliminary Approval of Class Action Settlement, *Kahler v. Rensselaer County*, No. 1:03-cv-01324 (N.D.N.Y.

4

Mar. 18, 2004); Order, *Kahler v. Rensselaer Country*, No. 1:03-cv-01324 (N.D.N.Y. Sept. 23, 2004). Counsel in *Kahler* received attorneys' fees of approximately $442,700 out of a total settlement fund of $2.7 million, about 16% of the fund.[1] In *Mariott*, the district court granted the plaintiffs' motion for partial summary judgment in April 2006, concluding that Montgomery County's jail policies included an unconstitutional strip search for which the county was liable (although reaching no decision as to the scope of damages) and that plaintiffs' counsel, as counsel to a prevailing party in an action brought under 42 U.S.C. § 1983, were entitled to a statutory award of interim attorneys' fees. *Marriott v. County of Montgomery*, 426 F. Supp. 2d 1, 6-12 (N.D.N.Y. 2006). The parties thereafter reached a settlement, which received final approval in May 2007, resulting in an attorneys' fees award of $600,000 out of a total settlement fund of $2 million, or 30% of the fund. *See* Motion to Approve Consent Judgment (Exhibit A, Settlement Agreement), *Marriott v. County of Montgomery*, No. 5:03-cv-00531 (N.D.N.Y. Apr. 13, 2007); Order Granting Final Approval of Class Action Settlement and Judgment, *Marriott v. County of Montgomery*, No. 5:03-cv-00531 (N.D.N.Y. May 15, 2007).

On September 5, 2007, the district court in this case conducted a final fairness hearing regarding the proposed settlement agreement, during which it issued an oral decision regarding the acceptability of the agreement. In determining the proper fees to be awarded to counsel from the common fund, the court noted its duty to act as "a guardian of the rights of absent class members" and the resulting need to "approach fee awards with an eye to moderation." Oral Decision at 9.

---

[1] Because unclaimed portions of the fund reverted to the defendant, attorneys' fees as a percentage of the fund actually paid to plaintiffs were ultimately higher. *See Nilsen v. York County*, 400 F. Supp. 2d 266, 287 (D. Me. 2005) (discussing *Kahler*).

Further observing that the calculation of a reasonable fee was committed to its sound discretion, the court indicated that "[i]n the past, both the lodestar and the percentage of fund methods have been available to district judges in calculating attorneys' fees in common fund cases," and provided a brief explanation of each approach. *Id.* at 9-10. As the court noted, under the lodestar method:

> [T]he district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate[.] [O]nce that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors such as the risk of litigation and the performance of the attorneys.

*Id.* at 9. The court stated that the percentage method, by contrast, involves setting "some percentage of the recovery as the fee," and recognized that, whether using the percentage method or lodestar method of calculating attorneys' fees, a court is guided by the factors articulated by this Circuit in *Goldberger* in determining a "reasonable common fund fee." *Id.* at 9-10; *see Goldberger* 209 F.3d at 47, 50. Earlier in the fairness hearing, the court had noted that the requested amount of 26% of the total settlement fund, or $650,000, was equivalent to a lodestar multiplier of 1.98 to 2.24.

The district court then embarked upon a discussion of this Court's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110 (2d Cir. 2007), *superseded by* 522 F.3d 182 (2d Cir. 2008), quoting our observation that "the meaning of the term 'lodestar' has shifted over time and its value as a metaphor has deteriorated to the point of unhelpfulness." Oral Decision at 10 (quoting *Arbor Hill*, 493 F.3d at 117). In place of the traditional lodestar method, the district court characterized *Arbor Hill* as holding that:

> The better course [and] the one most consistent with attorneys' fees jurisprudence is for the district court, in exercising its considerable discretion, to bear in mind all of the case specific variables that this court and other courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate.

6

Accordingly, the reasonable hourly rate is the rate a paying client would be willing to pay.

*Id.* at 10. The court indicated that the factors relevant to any such determination were those described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989), as well as the underlying intuitions that "a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively" and that a paying client's negotiating position may be strengthened by the attorneys' "desire to obtain the reputational benefits that might accrue from being associated with the case." Oral Decision at 11. Finally, citing this Court's decision in *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133 (2d Cir. 2007), the district court characterized *Arbor Hill* as requiring a court to "determin[e] the reasonable hourly rate for each attorney and the reasonable number of hours expended and multiply[] the two figures together to obtain the presumptively reasonable award." Oral Decision at 12.

Drawing upon "the factors . . . outlined," the District Court then determined that application of the percentage method would be inappropriate, choosing instead "to determine what amount [was] reasonable using the factors articulated in *Goldberger* and the most recent *Arbor Hill* decision." *Id.* at 12. Regarding the first *Goldberger* factor, the time and labor expended by counsel in the course of prosecuting the case, the district court recognized that "class counsel put substantial time and effort into this case," but also concluded that this time and effort was sufficiently compensated by awarding fees determined by the attorneys' ordinary hourly rates. *Id.* at 12-13. Moreover, the court indicated that a multiplier was inappropriate in light of the fact that counsel had previously worked on two similar cases in the same judicial district, in which "some of the ground work for this litigation

7

was already established." *Id.* at 13. As to the second factor, the complexity of the case, the district court determined that the case at bar was "not particularly complex" as it was "an ordinary civil rights case in which liability appear[ed] reasonably certain." *Id.* With regard to the third factor, the risks involved in the particular litigation, it found that "liability was reasonably certain" and that although "there was risk on the issue of damages," that risk was of little importance to counsel, who would have been statutorily entitled to attorneys' fees as the prevailing party in a § 1983 action, even if only nominal damages were awarded. *Id. at 13-14.* The court further noted that, as to the fourth factor, the quality of representation, counsel "did a fine job," but were adequately compensated by the ordinary hourly rate counsel charged. *Id.* at 14. As to the fifth factor, the portion of the overall settlement allocated to attorneys' fees, the percentage arising from its use of the *Arbor Hill* method (roughly 13%) was "squarely within the range of reasonable percentages in such a case" as the instant one. *Id.* With regard to the last *Goldberger* factor, public policy, the district court took note of "the compelling public policy reasons for keeping an eye on attorneys' fees in class action cases." *Id.* at 15. Finally, the court briefly noted that *Arbor Hill* also required a district court to consider whether the burden of litigating the case had precluded an attorney from accepting other gainful employment.

After this discussion, the district court repeated its decision not to employ the percentage method or apply any type of multiplier to the fee calculated by multiplying the attorneys' hourly rates by the number of hours worked. At the same time, the court observed that it was awarding attorneys' fees based upon the rates ordinarily billed by class counsel, even to the extent that those rates were substantially higher than the prevailing rate in the Northern District of New York. This method yielded attorneys' fees in the amount of $344,795. The district court also allowed the reimbursement

of $9,001.50 in litigation expenses and $107,000 in administrative expenses. The total award thus amounted to $460,796.50.

After counsel for Appellants objected to the reduction of their fees, the district court clarified its reliance upon *Arbor Hill* in the following fashion:

> What I'm saying about *Arbor Hill* is this, I'm simply dispensing with the classic definition of the lodestar method. If that were to be applied as the way it was consistently applied, it would be irrelevant where an attorney was from, it would be what the prevailing rate is for attorneys in this area. That's the aspect of *Arbor Hill* that I'm dispensing with when I say that's no longer the standard of what constitutes a reasonable attorney's fee. That is as substantial an explanation why some of the fees as calculated in the fee schedule submitted by class counsel, they would have exceeded that traditional rate in the Northern District of New York. I've not discounted them as a result of that. That's the impetus of the *Arbor Hill* decision.

Oral Decision at 26-27.

On November 5, 2007, the district court issued a final decision and order approving the settlement and explicitly incorporating the content of its oral decision, including the award of attorneys' fees. The court slightly increased the total amount to be paid to counsel, granting attorneys' fees in the amount of $343,744.50, reimbursement of litigation expenses in the amount of $10,053.31, and administrative expenses in the amount of $107,233.40, resulting in a final award of $461,031.21.

This appeal followed.

**DISCUSSION**

We review a district court's award of attorney's fees for abuse of discretion, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47-48 (2d Cir. 2000), "which occurs 'when (1) [the court's] decision rests on an error of law (such as application of the wrong legal principle) or clearly

erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions.'" *Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204, 209 (2d Cir. 2009) (quoting *Vincenty v. Bloomberg*, 476 F.3d 74, 83 (2d Cir. 2007)). "'[A]buse of discretion' – already one of the most deferential standards of review – takes on special significance when reviewing fee decisions" because "'the district court, which is intimately familiar with the nuances of the case, is in a far better position to make [such] decisions than is an appellate court, which must work from a cold record.'" *Goldberger*, 209 F.3d at 47-48 (quoting *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992) (*per curiam*)).

In challenging the district court's attorneys' fee determinations, Appellants make several arguments. First, they contend that the district court committed legal error by failing to calculate attorneys' fees using the percentage method, suggesting "[t]he percentage method is the presumptive, preferred method" in this Circuit. Appellants' Br. at 9. Second, Appellants suggest that the district court improperly relied on *Arbor Hill* to justify its decision not to use the percentage method, since that case and others cited by the court involved statutory fee shifting rather than a common fund. Third, they assert that, whether or not the district court was within its discretion in employing a modified-lodestar method to calculate attorneys' fees, it committed errors in its application of the *Goldberger* factors, including the use of an unprecedented factor to penalize counsel for their experience in litigating similar cases. We consider each of these arguments in turn.

### I. *The District Court's Decision Not to Employ a Percentage-of-Fund Method*

Appellants contend that the district court failed to consider basing its calculation of attorneys'

fees on a percentage of the fund secured by counsel, that it flouted a "clear trend in the law towards [using] the percentage method," Appellants' Br. at 11, and even that it defied an instruction by the Supreme Court in *Blum v. Stenson* requiring the use of the percentage method in common fund cases, *see* 465 U.S. 886, 900 n.16 (1984) (observing that "[u]nlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under [42 U.S.C.] § 1988 reflects the amount of attorney time reasonably expended in the litigation").

Appellants' assertion that the district court "refused to consider using the percentage method at all," Appellants' Br. at 15, is factually incorrect. The court described both the lodestar method and the percentage method of calculating attorneys' fees in its bench decision before indicating that it would apply a variant of the former.[2] In its written decision and order approving the settlement, the court reiterated its decision to use neither a lodestar multiplier nor the percentage method in calculating the fee award. Thus, the "assertion that the district court erroneously refused even to consider using the percentage approach is squarely contradicted by the record. . . . [T]he court clearly understood that it could have awarded a percentage fee in this case. It simply chose not to do so." *Goldberger*, 209 F.3d at 50-51.

Although we have acknowledged that "the trend in this Circuit is toward the percentage method," it remains the law in this Circuit that courts "may award attorneys' fees in common fund

---

[2] While the *Arbor Hill* panel indicated its preference for abandonment of the term "lodestar" altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method. To emphasize the similar role of both the lodestar method and *Arbor Hill*'s method as alternatives to the percentage-of-fund approach, we refer to *Arbor Hill*'s approach as a "variant" or "modified" lodestar method throughout this opinion.

11

cases under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Cent. States Se. v. Merck-Medco*, 504 F.3d 229, 249 (2d Cir. 2007) ("In common fund cases, courts typically use either the lodestar method or the percentage method to compute attorneys' fees."); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) ("Of course, courts may continue to use the lodestar approach alone in calculating attorneys fees in common fund cases."). And this Court has never treated the Supreme Court's dicta in *Blum* as demanding a single method for calculating attorneys' fees in common fund cases or otherwise foreclosing the use of a lodestar approach. *See Goldberger*, 209 F.3d at 49 (observing that "*Blum* indicates that 'the percentage-of-the-fund method is a viable alternative'" (quoting *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)), and noting that six other circuits, post-*Blum*, have given district courts the option of choosing either the percentage or the lodestar method).

Appellants nonetheless urge this Court to adopt the percentage method as the presumptive approach to fee awards or to abandon the lodestar approach altogether, noting that several other circuits have done so. This court has considered the advantages and disadvantages of the lodestar and percentage methods previously, *see Goldberger*, 209 F.3d 47-53, and we need only address them briefly here.[3]

The lodestar method is not perfect. It creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons also can create a disincentive to early

---

[3] In addition to the cases and other sources cited *infra*, *see In re Auction Houses Antitrust Litigation*, 197 F.R.D. 71 (S.D.N.Y. 2000), for an expanded discussion of the disadvantages associated with the lodestar and percentage-of-fund approaches to common fund fee awards.

12

settlement. *See id.* at 48-49 (citing *Savoie*, 166 F.3d at 460-61). Under certain conditions, moreover, lodestar awards can create the near opposite incentive, encouraging attorneys to settle before trial even when it is not in their clients' best interest. While under the lodestar method lawyers share the "downside" risk of trial (i.e., the possibility of an adverse judgment, and hence no fee), they do not share in the potential economic "upside" (i.e., fees as a percentage of a large common fund), especially since trial requires comparatively fewer hours than the process of trial preparation. *See* Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions*, 43 STAN. L. REV. 497, 543 (1991); John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: the Implications of Economic Theory for Private Enforcement of Law through Class and Derivative Actions*, 86 COLUM. L. REV. 669, 717 (1986) (hereinafter Coffee, *Understanding the Plaintiff's Attorney*). Although the district court is charged with ensuring the fairness of a proposed settlement, including any lodestar-based attorneys' fee award, this task is often challenging in common fund cases, especially because – since the attorneys' fees are drawn from a common fund rather than being paid separately by the defendants – there is little incentive for the defendants to contest the size of the fee. To the contrary, plaintiffs' and defendants' lawyers share an interest in the approval of an agreed upon settlement. *Goldberger*, 209 F.3d at 52-53. As a result, the district judge "los[es] the benefit of an adversarial process, which may . . . inform[] and sharpen[] the judicial inquiry." *Doe v. C.I.A.*, 576 F.3d 95, 107 (2d Cir. 2009); *see also Baker v. Carr*, 369 U.S. 186, 204 (1962); *Goldberger*, 209 F.3d at 53 ("It is not without significance that when [lead counsel for plaintiffs on appeal] stood up at oral argument to petition for a bigger slice of his clients' recovery, no one sat adjacent to him at opposing counsel's table.").

13

But the percentage method has its limitations as well. As we indicated in *Goldberger*, this Circuit's adoption of the lodestar method was precipitated by the perception that percentage fees "tended to yield too little for the client-class, and an unjustified 'golden harvest of fees' for the lawyer." 209 F.3d at 48 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468, 469 (2d Cir. 1974) ("*Grinnell I*"), *abrogated on other grounds by Goldberger*, 209 F.3d at 43). Particularly in cases that result in a very large monetary award, the percentage method holds the potential to result in attorneys' fees many times greater than those that would have been earned under the lodestar of hourly rate multiplied by hours worked. "The principal analytical flaw" in Appellants' argument for a presumptive percentage award as a "benchmark" in common fund cases lies in the "assumption that there is substantial contingency risk in every common fund case" that would justify such a multiplier. *Id.* at 52.

Moreover, although the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation, it can create perverse incentives of its own, potentially encouraging counsel to settle a case prematurely once their opportunity costs begin to rise. *See* Coffee, *Understanding the Plaintiff's Attorney* at 687-90. And as in the case of the lodestar method, neither defense counsel nor the actual plaintiffs have much of an incentive under the percentage-of-fund approach to oppose an award of attorneys' fees, the latter since "[t]hey have no real incentive to mount a challenge that would result in only a 'minuscule' *pro rata* gain from a fee reduction." *Goldberger*, 209 F.3d at 53 (citing *Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992)).

In short, neither the lodestar nor the percentage-of-fund approach to awarding attorneys' fees

in common fund cases is without problems. It is for reasons such as those just discussed that in *Goldberger* we declined to "junk" the lodestar method in favor of the presumptive or exclusive use of the percentage method, *see id.* at 47-53, and instead left the decision as to the appropriate method to "the district court, which is intimately familiar with the nuances of the case." *Id.* at 48. While Appellants assert that there would be a benefit in allowing "district judges . . . [to] step away from the business of analyzing and reviewing attorneys' fee applications," Appellants' Reply Br. at 9, we underscore the importance of the district court's duty "to act as a fiduciary who must serve as a guardian of the rights of absent class members," *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977) ("*Grinnell II*") (internal quotation marks omitted) *abrogated on other grounds*, *Goldberger*, 209 F.3d at 43, and reaffirm the requirement of a "searching assessment" regarding attorneys' fees "that should properly be performed in each case." *Goldberger*, 209 F.3d at 52. Even were we not bound by Circuit precedent on the matter, we would decline to hold otherwise.

**II.** *The District Court's Reliance on* **Arbor Hill**

Appellants also contend that the district court impermissibly relied on this court's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110 (2d Cir. 2007), since that case addressed the use of the lodestar method in the context of statutorily awarded attorneys' fees, rather than a common fund.[4] They suggest, *inter alia*, that reliance on *Arbor*

_____

[4] The district court in this case relied on the original version of the *Arbor Hill* opinion. *See* 493 F.3d 110 (2d Cir. 2007). Following a petition for rehearing, this Court amended its opinion *sua sponte*. *See* 522 F.3d 182 (2d Cir. 2008). While we cite to the amended version, the differences between the two opinions are immaterial for the purposes of this appeal.

As Appellants note, the district court also referred to other statutory fee-shifting cases, including *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133 (2d Cir.

15

*Hill* may have improperly influenced the district court's decision to select a modified lodestar approach rather than a percentage-of-fund approach, though the court's bench decision does not, in fact, make it at all evident that the case influenced the court's selection.

At the start, we note that it is unclear how any error in the district court's decision to use *Arbor Hill*'s modified lodestar approach, even assuming such error occurred, could compel a finding that the court should have used the percentage method instead. Given that a district court has the discretion to choose either the lodestar or percentage-of-fund approach in calculating attorneys' fees, *see supra* Section I, any error in a court's application of the lodestar method would not necessitate selection of the percentage method on remand.

To the extent that Appellants' argument depends on the inference that, had the district court not referenced *Arbor Hill*, Appellants' suggested 26% fee would have seemed more reasonable, an analysis of *Arbor Hill* and the district court's reliance on that decision shows that Appellants' concern is unfounded. In *Arbor Hill*, this Court proposed the use of a modified version of the lodestar approach and recommended abandonment of the term "lodestar" for the alternative term "presumptively reasonable fee." 522 F.3d at 183. In brief, the Court suggested that a district court's efforts to approximate the reasonable fee that a competitive market would bear – the implicit goal of the lodestar approach – would be better served by considering case-specific "reasonableness" factors earlier in the calculation. Instead of first determining the lodestar (multiplying an hourly rate by the number of hours worked) and then adjusting the lodestar through a multiplicative factor to account

2007), and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989). Our discussion in this section accounts for the district court's reliance on those cases as well.

for case-specific considerations, the *Arbor Hill* Court suggested that a district court should assess case-specific considerations at the outset, factoring them into its determination of a reasonable hourly rate for the attorneys' work. *See id.* at 186, 190. This reasonable hourly rate could then be multiplied by the number of hours worked to generate a "presumptively reasonable fee."[5] *Id.* at 190. As *Arbor Hill* was a statutory fee shifting case, the Court pointed towards the twelve case-specific factors outlined in *Johnson*, 488 F.2d at 717-19, as being among those relevant to a district court's determination of a reasonable market rate under this revised approach. *See Arbor Hill*, 522 F.3d at 190.

*Arbor Hill* also indicated that the district court in that case had been unduly restrictive in its interpretation of the "forum rule," though it ultimately upheld the district court's decision to deny the request of plaintiffs' counsel to calculate their hourly fees based on their home district, rather than the less expansive prevailing rates in the district where the litigation occurred. *See id.* at 190-94. In clarifying the forum rule, the Court held that:

> [A] district court may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys – in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. We presume, however, that a reasonable, paying client would in most cases hire counsel . . . whose rates are consistent with those charged locally. This presumption may be rebutted – albeit only in the unusual case – if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill.

---

[5] The Court's dissatisfaction with the term "lodestar" stemmed from its sense that the term had lost its meaning in the sense of a "star that leads," since the number generated by the first step of the traditional lodestar approach, by definition, did not incorporate case-specific factors that would enable it to correctly approximate a market hourly rate for fees. *See id.* at 189-90.

*Id.* at 191. The Court further indicated that "the reasonableness of a prevailing party's decision to retain out-of-district counsel is best considered in setting the hourly rate – rather than deciding whether to adjust a presumptively reasonable fee," since, *inter alia*, this approach comported with the focus on market rates underpinning *Arbor Hill*'s "presumptively reasonable fee" approach. *Id.* at 191-92.

In the instant case, the district court observed early in its bench decision that the Plaintiffs' suggested fee award of 26% represented, in its estimation, a multiplier of 1.98-2.24 beyond what counsel would have earned based on their hourly rates. Appellants suggest that to the extent the district court's impression of the multiplier as being too large may have been responsible for its disinclination to base attorneys' fees on a percentage of the fund, the court's reliance upon *Arbor Hill* worked to their detriment. In clarifying its understanding of that case, however, the court indicated that if "[the traditional lodestar method] were to be applied . . . it would be irrelevant where an attorney was from, [and the appropriate rate] would be what the prevailing rate is for attorneys in this area." Oral Decision at 26. The court then stated that "some of the fees as calculated in the fee schedule submitted by class counsel . . . would have exceeded [the] traditional rate in the Northern District of New York. I've not discounted them as a result of that." *Id.* at 26-27. In other words, had the district court not referenced *Arbor Hill*, and instead relied on its understanding of the forum rule as traditionally applied, Appellants' suggested 26% fee would have represented an even *higher* multiplier of the lodestar. If Appellants are correct that the court's assessment of the multiplier contributed to its decision not to use a percentage-based approach, the court's reliance on *Arbor Hill*

18

cannot have hurt them.[6]

In any event, we find no error in the district court's reliance on *Arbor Hill* in this case. At bottom, Appellants' arguments regarding *Arbor Hill* are founded upon the assumption that the lodestar method applied in the common fund context is distinct from that employed in the statutory fee-shifting context. While it is true some district courts in this Circuit have expressed uncertainty as to the relevance of *Arbor Hill* in common fund cases, *see In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.3 (S.D.N.Y. Jan. 3, 2008); *In re AOL Time Warner ERISA Litig.*, No. 02 Cv. 8853, 2007 WL 3145111, at *1 n.3 (S.D.N.Y. Oct. 26, 2007), this Court's case law does not suggest that there are two different lodestar methods, *see, e.g., In re Agent Orange Products Litig.*, 818 F.2d 226, 232 (2d Cir. 1987) ("[W]e have adopted a lodestar formula for calculating fees in equitable fund and statutory fee contexts."). To the contrary, in discussing the lodestar method, our common fund and statutory fee shifting cases have employed the same definition and referenced the same foundational cases.[7] *See, e.g. Arbor Hill*, 522 F.3d at 186 (citing *Lindy*

_____

[6] We note in passing that this Court's recent decision in *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009), has further clarified the forum rule, emphasizing *Arbor Hill*'s language that use of an out-of-district rate is appropriate "only in the unusual case." *See Simmons*, 575 F.3d at 174. Were we to reconsider the district court's decision to permit some class counsel in this case to use an out-of-district rate, we would examine whether Appellants made not only "a particularized showing . . . that the selection of out-of-district counsel was predicated on experience-based, objective factors," but also demonstrated "the likelihood that the use of in-district counsel would [have] produce[d] a substantially inferior result." *See id.* at 176. Given that the forum rule was not raised as an issue in this appeal, and the fact that it would likely be within the district court's discretion to award the same attorneys' fee by reevaluating the *Goldberger* factors, we decline to remand for consideration of this issue alone.

[7] We do not suggest that concerns present in the common fund and statutory fee-shifting contexts are identical in every respect, *compare Goldberger*, 209 F.3d at 53 (noting that in common fund context, plaintiffs have little incentive to negotiate size of attorneys' fees because of

19

*Bros. Builder, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) as foundational case for lodestar approach in statutory fee case); *Goldberger*, 209 F.3d at 48 (citing *Lindy Bros.* in common fund case); *Grinnell I*, 495 F.2d at 470-74 (citing *Lindy Bros.* in justifying adoption of lodestar approach in common fund case). It is therefore not surprising that several district courts within this Circuit have referred to *Arbor Hill*'s "presumptively reasonable fee" approach in common fund cases. *See Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 434 (S.D.N.Y. 2007) (referencing *Arbor Hill* in use of lodestar as cross-check on reasonableness of percentage award)*; In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, Nos. 97 Civ. 2262, 98 Civ. 9186, 00 Civ. 9413, 2009 WL 762438, at *2 (S.D.N.Y. Mar. 24, 2009) (relying upon *Arbor Hill* to explain application of lodestar method); *AOL Time Warner*, 2007 WL 3145111, at *1 n.3 (concurring with conclusions of *Arbor Hill*-based cross-check of percentage award). From a mathematical perspective, of course, it makes little difference whether a court, following *Arbor Hill*, considers case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers these same factors in calculating a multiplier to the lodestar. The benefit of *Arbor Hill*'s methodology is that by considering case-specific factors at the outset, the district court's focus on mimicking a market is maintained. *See Arbor Hill*, 522 F.3d at 192.

To the extent that the specific factors considered by courts in the common fund and statutory

---

their minimal *pro rata* gain from any reduction in fees), *with Arbor Hill*, 522 F.3d at 184 (noting that in the fee-shifting context, plaintiffs have little incentive to negotiate a market-based rate structure with attorneys because fees are paid entirely by defendants), but simply that the lodestar approach is common to both.

fee-shifting contexts are somewhat different, *compare Wal-Mart*, 396 F.3d at 121, *with Johnson*, 488 F.2d at 717-19, we note that the district court's reliance on *Arbor Hill* in this case was limited. While the court referenced *Johnson* in its initial discussion of *Arbor Hill*, it later clarified that it was relying on the latter for its "presumptive reasonable fee" approach and its more flexible application of the forum rule. And in considering case-specific factors, the district court clearly followed *Goldberger*, addressing each of the six factors outlined in that case. The one *Johnson* factor separately considered by the court, "the preclusion of employment by the attorney due to acceptance of the case," Oral Decision at 15, weighed in favor of a higher fee award, and its consideration did not prejudice the Appellants. We are therefore unconvinced the court "modified the *Goldberger* factors" in any meaningful way by referencing *Arbor Hill*, and accordingly, we find no error in the district court's reliance on that case.

### III. *The District Court's Application of the* Goldberger *Factors*

Appellants' final arguments concern the district court's application of the case-specific factors elucidated in *Goldberger* for determining the reasonableness of a common fund fee. Appellants contend that, in addition to committing errors in relation to each of these factors, the district court "invented" an additional factor, holding the attorneys' experience in litigating strip search cases against them, when in fact their experience should have weighed in favor of a higher fee.

The *Goldberger* factors are applicable to the court's reasonableness determination whether a percentage-of-fund or lodestar approach is used, *see Wal-Mar*t, 396 F.3d at 121 ("Irrespective of which method is used, the '*Goldberger* factors' ultimately determine the reasonableness of a common fund fee."), and in the latter context, indicate whether a multiplier should be applied to the lodestar.

21

(Under the *Arbor Hill* approach, they would be factored into the appropriate hourly rate before calculating the presumptively reasonable fee.) The *Goldberger* factors include: (1) counsel's time and labor; (2) the litigation's magnitude and complexity; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d at 50. Importantly, we defer to the district court's determinations regarding these factors. *See id.* at 47-48. *Cf. Merck-Mecco*, 504 F.3d at 249 ("The District Court applied the *Goldberger* test and made specific and detailed findings from the record, as well as from its own familiarity with the case . . . . Accordingly, we find no reason to disturb the District Court's [determination].").

We address first Appellants' contention that the district court improperly counted the attorneys' experience in litigating strip search cases against them when that factor should have counted, if at all, in favor of the higher proposed fee award. Although attorney experience is not explicitly enumerated among the *Goldberger* factors, it is clear that experience might be relevant to several of them, including consideration of the time and effort expended by counsel, the complexity of the litigation, and quality of the representation. In *Goldberger* itself, this Court upheld the district court's decision to award a lodestar fee with no multiplier in part based upon its observation that the attorneys had been "helped enormously" by the "spadework" performed by federal authorities in actions against the same defendants and because the legal issues presented were not novel. 209 F.3d at 54, 56.

Here, the advance spadework that assisted counsel in their suit against the County of Schenectady did not involve the previous unearthing of facts regarding the specific defendants, but

rather the prior mining of relevant case law and shoring up of legal arguments that the district court reasonably concluded to have occurred during the course of two prior actions alleging unconstitutional strip search policies. The district court's decision to consider the benefit afforded to counsel by this experience – relevant to several of the *Goldberger* factors – does not constitute an error of law. Nor does Appellants' observation that experience might in some cases enable counsel to demand a higher fee make the district court's conclusion that it cut the opposite way in this case clearly erroneous. Indeed, our prior case law indicates that whether a given factor cuts in favor of or against the use of a multiplier depends heavily on the facts of a case. The level of risk associated with litigation, for example, which is "perhaps the foremost factor" to be considered in assessing the propriety of a multiplier, and typically weighs in its favor, can weigh against the use of a multiplier when the magnitude of risk stems only from a lawsuit's dubious legal merit. *See id.* at 54 (internal quotation marks omitted).

We similarly see no clear error in the district court's remaining determinations as to the *Goldberger* factors. Appellants find fault with the court's determination regarding the first factor, that counsel were adequately compensated for their time and effort using their ordinary rates, and suggest that here attorney experience should have weighed in favor of some multiplier. They further criticize the court's finding regarding the fourth factor, quality of representation, and urge that the fact that class counsel "did a fine job and obtained a good settlement," Oral Decision at 14, also should have counted in favor of a higher award. We have already addressed the experience argument, and for similar reasons find Appellants' contention regarding their performance to be insufficient to show clear error. Even in *Goldberger*, where counsel were praised by the district court as "the cream

23

of the profession" whose "genius and dedication were vital in resolving the complexities of the litigation," this Court upheld a fee award with no multiplier. 209 F.3d at 55-56. Both here, and in that case, "while the district court declined to award formal multipliers for . . . quality of representation, the court did consider those factors by allowing counsel to recover generous hourly fees." *Id.* at 56. "[T]he question before us is not whether we would have awarded a different fee, but rather whether the district court abused its discretion in awarding this fee." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir. 2008).

Nor are we convinced that *Goldberger* factors two and three, the complexity and risk associated with the litigation, compel a higher fee award than that granted by the court below. In response to the district court's conclusion that the case was "an ordinary civil rights case in which liability appear[ed] reasonably certain," Oral Decision at 13, Appellants contend that the case was "far from simple," Appellants' Br. at 24, that this Circuit's holding in *Shain* regarding the unconstitutionality of misdemeanor strip searches was "far from stable" at the time of their suit, *Id.* at 25 (quoting *McBean v. City of New York*, 233 F.R.D. 377, 387 (S.D.N.Y. 2007)), and that they faced substantial litigation risk due to the availability of an exhaustion of remedies defense under the Prison Litigation Reform Act ("PLRA") and because damages were difficult to prove in their case. While appellants are correct that *Shain* was decided by a divided panel, we cannot say that the district court's sense of the strength of Appellants' case was clearly erroneous. At the time the instant suit was brought, *see Goldberger*, 209 F.3d at 55 (noting that "[i]t is well-established that litigation risk must be measured as of when the case is filed"), a policy of conducting blanket strip searches of misdemeanor detainees was clearly unconstitutional. *See Shain*, 273 F.3d at 62-66. Settlements had

24

already been reached in two other class actions involving blanket strip search policies, including *Kahler*, in which Appellants' counsel themselves were involved, and the issue of liability had been resolved in favor of plaintiffs in a third. *See Dodge v. County of Orange*, 282 F. Supp. 2d 41 (S.D.N.Y. 2003) (finding defendants liable); Stipulation and Order of Settlement and Discontinuance, *Spinner v. City of New York*, No. 1:01-cv-2715 (E.D.N.Y. June 9, 2004); Motion to Certify Class and for Preliminary Approval of Class Action Settlement, *Kahler v. Rensselaer County*, No. 1:03-cv-01324 (N.D.N.Y. Mar. 18, 2004). Moreover, Appellants' complaint noted that the Schenectady Police Department's strip search policy, which they alleged was closely related to that of the defendant county, had been found unconstitutional in *Gonzalez v. City of Schenectady*, 141 F. Supp. 2d 304 (N.D.N.Y. 2001). Compl. at ¶ 33. While Appellants note that the Appellees distinguished the "change outs" pursuant to their policy from forbidden strip searches, and point to a purportedly similar case in which a lawsuit was dismissed, that case was decided nearly a year after they brought suit. *See* Judgment, *Steinberg v. County of Rockland*, No. 04 Civ. 4889 (S.D.N.Y. May 23, 2005).

Appellants' assertions that the defendants in this case possessed potentially valid defenses and that damages were difficult to prove are similarly insufficient to demonstrate clear error in the district court's findings with respect to litigation risk. Counsel must do more than "point to . . . general hurdles – such as the defenses available to defendants –" and "argue that because their fee was entirely contingent on their ability to overcome such hurdles, they *must*, as a matter of law, be compensated by a fee enhancement." *Goldberger*, 209 F.3d at 54. While the district court acknowledged that an award of damages was uncertain in the case, it correctly noted that "[t]he

damages risk is of little consequence to an attorney for a prevailing plaintiff in a civil rights case who's entitled to obtain attorneys' fees pursuant to 14 [U.S.C. §] 1988." Oral Decision at 13-14. Even if only nominal monetary damages had been recovered, Appellants' attorneys stood to recover a fee based on their success in obtaining injunctive relief. "[W]here both monetary and equitable relief have been pursued, the size of the monetary recovery is not necessarily the proper measure of the plaintiff's success. . . . '[A] plaintiff who failed to recover damages but obtained injunctive relief . . . . may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.'" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 n. 11 (1983)). *Cf. McCardle v. Haddad*, 131 F.3d 43, 54 (2d Cir. 1997) ("[W]e have held that the denial of attorneys' fees was not an abuse of discretion where the plaintiff recovered only nominal damages and received no other meaningful relief.").

Finally, we reject Appellants' assertions that the district court erred in its findings as to the fifth and sixth *Goldberger* factors, the reasonableness of the fee in relation to the size of the settlement and public policy considerations relevant to fee awards. Appellants' argument with regard to the former essentially repeats their "benchmark" assertion that the fee award in this case was too far from the percentage-of-fund awards in similar cases, adding that the district court erred in its assessment that an award equivalent to 13% was "squarely within the range" of typical awards and that Appellants' suggested lodestar multiplier was at the low end of multipliers that have often been awarded. While Appellants cite to *Nortel* as demonstrating this Court's concern over a district court's failure to consider awards in similar cases, that case *upheld* a fee award despite its disparity

26

from other awards. *See* 539 F.3d at 134. Our case law makes clear both that no presumption applies to the percentage of a common fund that should be awarded to plaintiffs' counsel, and that an award of no lodestar multiplier at all is within the district court's discretion. *See Goldberger*, 209 F.3d at 51-57. A fee award does not "constitute an abuse of discretion simply because it deviates materially from the [percentage] usually awarded in similar cases. Instead, we adhere to our prior practice that a fee award should be based on scrutiny of the unique circumstances of each case, and a 'jealous regard to the rights of those who are interested in the fund.'" *Id.* at 53 (quoting *Grinnel II*, 495 F.2d at 469). Even if a more thorough review by the district court of attorneys' fee awards in strip-search common fund cases might have indicated that the 13% fee awarded in this case was slightly below the lower end of the spectrum, *see Nilsen v. York County*, 400 F. Supp. 2d 266, 281, 287-289 (D. Me. 2005) (observing a percentage-of-fund range of 16-33% in strip search cases), we conclude that the district court's award was within its discretion given the considerations outlined in its discussion of the *Goldberger* factors. *See Nortel*, 539 F.3d at 134.

We are mindful that public policy supports the pursuit of meritorious class action litigation to vindicate constitutional rights. Appellants suggest that some reward beyond the ordinary remuneration for legal services is needed to ensure that such suits are brought by competent counsel. "On the other side of the ledger, however, is our longstanding concern for moderation." *Goldberger*, 209 F.3d at 57. Civil rights cases may or may not raise the same danger of "routine overcompensation" for risk that has troubled this court in the context of "mega-fund" class actions, but it is because of the case-specific nature of the fee award inquiry that we have been loath to disturb the determinations of district courts in this area. "When the exercise of . . . discretion is supported

by adequate findings and is consistent with our preference for moderation, as it was here, we will not substitute our own predilections for the judgment of the district court." *Id.*

**CONCLUSION**

For the foregoing reasons, the order of the District Court appealed from is **AFFIRMED**.