Amelia **HERNANDEZ,** Edith Hernandez Rojas, Juan Eduardo Hernandez, individually and on behalf of other persons similarly situated, Plaintiffs,

v.

**IMMORTAL RISE, INC.,** d/b/a C–Town, Ahmad Saleh, and/or any other entities affiliated with or controlled by Immortal Rise, Inc., and/or Ahmad Saleh, Defendants.

No. 11 CV 4360(LB).

United States District Court, E.D. New York.

Signed March 27, 2015.

---

Suzanne B. Leeds, Leonor H. Coyle, Lloyd Robert Ambinder, Virginia & Ambinder, LLP, New York, NY, for Plaintiffs.

Joseph M. Labuda, Milman Labuda Law Group, PLLC, Lake Success, NY, Matthew A. Brown, Milman Labuda Law Group PLLC, New Hyde Park, NY, for Defendants.

### OPINION AND ORDER

BLOOM, United States Magistrate Judge:

Amelia Hernandez, Edith Hernandez Rojas, and Juan Eduardo Hernandez, (collectively "plaintiffs"), brought this action against Immortal Rise and Ahmad Saleh (collectively, "defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), New York Labor Law ("NYLL"), and New York Codes, Rules, and Regulations ("NYCRR"). Plaintiffs commenced this action as a putative class action to recover unpaid minimum wages, overtime wages, and spread of hours compensation owed to plaintiffs and all similarly situated individuals who are presently or were formerly employed by defendants.

Plaintiffs now seek an order certifying the settlement class; approving the class action settlement; awarding a service award to the named plaintiffs on this case as well as to the named plaintiffs on a related action covered by this settlement; and awarding attorneys' fees and costs to class counsel. For the following reasons, the motions are granted. (ECF No. 86.)[1]

### I. BACKGROUND

Plaintiffs were employed as cashiers, delivery people, and stock clerks in defendants' supermarket. Pls.'s Amend. Compl. at ¶¶ 12–17 (ECF No. 12.) Plaintiffs allege that defendants failed to pay them and members of the putative class minimum wages, overtime wages, and spread of hours compensation as required by the FLSA and by New York Labor Law. *Id.* at ¶ 32. The proposed class is defined as: "Plaintiffs and all current and former employees of C–Town (located at 4705 Fifth Avenue, Brooklyn, New York) who performed work as cashiers, delivery persons, grocery packers, and other supermarket related tasks, from September 5, 2006 through the Effective Date."[2] *See* Order, dated Nov. 3, 2014 (ECF No. 85.) ("Preliminary Approval Order"), p. 2.

In July 2014, the parties entered into a settlement agreement and moved for preliminary approval of the settlement agreement. Prior to entering into the settlement agreement, the parties engaged in significant discovery, numerous negotiations, and in person settlement discussions with defendants' principal owners. *See* Memo of Law in Support of Pls.' Mot. for Prelim. Approval, p. 5 (ECF No. 75–3.) With input from the Court, the parties made necessary revisions to the motion for preliminary approval, proposed order, supporting declaration, and the proposed Notice and Claim Form. (ECF No. 84.)

---

1. On September 22, 2014, the parties consented to the magistrate judge's jurisdiction. (ECF No. 79.)

2. Pursuant to the parties' settlement agreement, the "Effective Date" is "the first business day after which [this Order] becomes Final and all Disputed Rule 23 Claims have been resolved in accordance with the terms of the Stipulation." Settlement Agreement § 1(L). (ECF No. 86–7.)

The Settlement Agreement ("the Agreement") creates a settlement fund of $550,000 to cover all potential Class Claimants, inclusive of costs and attorneys' fees.[3] The Settlement Fund ("the Fund") is personally guaranteed by Defendants and Iyad Saleh.[4] The Fund and the agreement includes the plaintiffs in a related action: *Limon, et al. v. Saleh*, 13 CV 3421(JBW)(RER) ("the *Limon* action") and resolves that action as well.[5]

The Agreement outlines a detailed procedure for class members to file notices of claim. *See* Settlement Agreement at § 7—Procedures for Filing a Proof of Claim. (ECF No. 86-7.) Class claimants are entitled to recover a sum equal to $67.30 per week, and not to exceed $3,500 annually, less any tax withholdings for each and every full and complete year the class claimant was employed by defendants from September 5, 2006 to December 31, 2011. As defendants' payroll documents for some class claimants are limited, the parties agreed to a procedure by which individual claims may be disputed. *Id.* at § 7(c). If the parties cannot settle the disputed claim, the Agreement outlines a process whereby an arbitrator shall decide the claim. The arbitrator's fee shall be paid by defendants. *Id.*

The Agreement stipulates that class members' claims will be prorated downward if the filed claims reach over $300,000; further, defendants can potentially void the agreement as part of a "blow up" provision if the claims exceed $375,000. *See* Settlement Agreement at § 2(b). (ECF No. 86-7.)[6] While the Court must approve the application for attorney's fees, the parties agreed that professional fees and costs will be included in the Fund and will not exceed $170,000 and that defendants would not oppose class counsel's application for fees on that basis. The agreement further provides for a service fee of $7,500 to be paid from the Fund to each of the three named plaintiffs in this action: Amelia Hernandez, Edith Hernandez Rojas, and Juan Eduardo Hernandez. Further, the two originally named plaintiffs in the related *Limon* action, Jose Sanchez Limon and Humberto Sanchez Limon, shall each be paid a service fee of $2,500 from the Fund. The Agreement also contains a provision governing the procedure if defendants default in making timely payments, outlining that Class Counsel may file an enforcement action if defendants fail to timely cure their default. In exchange for settlement of their claims, the class members who file claim forms (i.e. "the claimants") release all claims related to or arising out of this action, including the FLSA and NYLL claims. Class members who do not file claim forms release *only* their claims under New York law and do not release any potential FLSA claim. *See* Settlement Agreement at § 3(a). (ECF No. 86-7.)[7]

---

3. See Pls.' Mot for Final Approval of Settlement, Ex. E (ECF No. 86-7) for all references to the Settlement Agreement.

4. While not a named defendant in this action, Iyad Saleh was named as a defendant in the related *Limon* action. *See Limon, et al. v. Saleh*, 13 CV 3421(JBW)(RER).

5. On June 9, 2014, the parties notified the Court that they reached a settlement agreement in this action that would cover both cases. Accordingly, on June 17, 2014, the Court dismissed the *Limon* action.

6. As discussed below, while negotiated by counsel, these provisions ultimately did not apply as the amount of claims submitted fell below these numbers.

7. The parties correctly and unequivocally state the release of claims in Section 9 of the Settlement Agreement. "... [N]othing herein shall be deemed to relinquish, waive, discharge or release the right of any Class Member who does not file a Proof of Claim to initiate a claim for unpaid FLSA wages with the Department of Labor or in a Court of competent jurisdiction." However, in the "Release" section, there is a typographical error that clearly conflicts with the other provisions of the Agreement. Below is the relevant language from Section 3(a) of the Settlement Agreement as it should read, with the correction underlined:

Upon payment of all Settlement Funds due to the Class Claimants and for professional fees and costs, each Class member (other than those who opt-out of this Action) shall conclusively be deemed to have released, with prejudice, through the date of payment, the Defendants, Iyad Saleh and all past, present and future officers, directors, shareholders, subsidiaries, affiliates, parent corporations, reinsurers, principals, agents, employees, attorneys, accountants, or other representatives of the Defendants from any and all claims, causes of action, rights, debts, costs, expenses, or attorney's fees, whether known or unknown, in any and all forums, which have or could have been

On November 3, 2014, the Court preliminarily approved the Settlement Agreement. *See* Preliminary Approval Order at p. 4. Pursuant to the Order, the Notice and Claim forms were mailed on December 1, 2014. February 3, 2015 was the deadline for class members to qualify as an "Authorized Claimant" by filing a Claim Form to join the settlement. It was also the deadline for class members to opt out or submit written objections to the Settlement.

The Notice and Claim Forms, in both English and Spanish, were mailed to 109 class members at their last known addresses. *See* Ambinder Decl. at ¶ 4 (ECF No. 86–2.) The Notice summarized the settlement agreement and explained the claimant's rights and options, including providing class members with notice of the scheduled Fairness Hearing before the Court (ECF No. 86–5.) In instances where the mailed Notice was returned, class counsel performed a "skip trace" and the Notice was re-mailed to a new address if one could be found. *Id.* Notice was also conspicuously posted in defendants' place of business for 60 days. *See* Settlement Agreement § 7(f). Further, as outlined in the agreement and as plaintiffs' counsel stated on the record at the Fairness Hearing, notice was published in "El Especialito," a free Spanish language newspaper, on three separate occasions. *Id. See also* Pls.' Mot. for Final Approval of the Settlement. Ex. C (ECF No. 86–5) for the Spanish translation of the notice.

Twenty-two (22) claim forms were returned by class members claiming unpaid wages. *See* Ambinder Decl. at ¶ 4 (ECF No. 86–2); *see also* Pls.' Mot. for Final Approval of the Settlement. Ex. D (table detailing claims filed). No objections to the settlement were filed. On March 10, 2015, the Court held a Fairness Hearing. No class member appeared at the hearing, nor has any member objected to or opted out of the proposed settlement.

## II. ANALYSIS

### A. Final Certification of the Settlement Class

In order for a Rule 23 class to be certified by the Court, the Court must find that the class is "so numerous that joinder of all members is impracticable", there must be "questions of law or fact common to the class", "the claims or defenses of the representative parties are typical of the claims or defenses of the class", and "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In addition, the class must fall into at least one of the three categories outlined in Rule 23(b).

#### a. Rule 23(a)

■ Based on the parties' representations, the class contains approximately 150 putative members and defendants provided last known mailing addresses for over 100 members. *See* Ambinder Decl. at ¶¶ 9, 10. (ECF No. 75–2.) The class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). *See e.g. Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) ("[N]umerosity is presumed at a level of 40 members ...").

■ Second, there are "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Common questions predominate over the class regarding: (1) whether defendants failed to properly compensate class members at the statutory minimum wage and overtime rate; (2) whether defendants failed to keep accurate records of the hours worked by class members, and (3) whether defendants failed to pay "spread of hours" wages pursuant to New York Labor Law. *See* Ambinder Decl. at ¶ 11 (ECF No. 75–2). "Commonality does not mean that all issues must be identical to each member, but it does

asserted in the Complaint or which arise out of or relate to the Defendants with respect to the claims that are the subject of the Action including but not limited to the New York Labor Law ("NYLL"). The Proof of Claim shall include a release for the Class Claimant's Fair Labor Standard Act ("FLSA") Claims. This FLSA release does not apply to Class Members who

do not file a Proof of Claim and nothing in this stipulation shall be deemed to waive, relinquish or impair any right that a Class Member who does *not* file a Proof of Claim may have to seek to enforce his or her rights under the FLSA.

The Court deems the Settlement Agreement corrected accordingly.

require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 105 (E.D.N.Y.2011) (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y.2008)). "The need for an individualized determination of damages generally does not defeat the requirement." *Lewis v. Alert Ambulette Service Corp.*, 11 CV 442, 2012 WL 170049, at *9 (E.D.N.Y. Jan. 19, 2012). All of the class members' claims raise common, if not identical, questions and all arise under the FLSA and NYLL.

 Third, the named plaintiffs' claims are "typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). This criterion "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir.2001) (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997) (*per curiam* )). Here, all class members allege similar violations of the FLSA and NYLL. All class members allege that they are owed back pay for defendants' failure to pay required minimum and overtime wages. The claims alleged by the named plaintiffs in this action and in the related *Limon* action are sufficiently similar to other class members' claims to satisfy this requirement.

 Finally, the representative party, the named plaintiffs, will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "The question of whether the named plaintiffs can fairly and adequately represent the class is one committed to the sound discretion of the district court." *Cty. of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1413 (E.D.N.Y. 1989) (internal quotation omitted). Only a fundamental conflict of interest between a representative and the class or subclass will defeat the adequacy of representation requirement. *Schwab v. Philip Morris*, 449 F.Supp.2d 992, 1107 (E.D.N.Y.2006), *rev'd on*

*other grounds sub. nom., McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir.2008). There is no reason to believe that the representative plaintiffs' interests are at odds with the interests of the class members in this litigation.

### b. *Rule 23(b)*

 Plaintiffs assert that this class falls under Rule 23(b)(3), which requires that common questions of law or fact predominate over questions affecting only individual members and that a class action is superior to other methods of resolving the dispute. *See* Ambinder Decl. at ¶ 24. (ECF No. 75-2.) The "predominance" requirement asks if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir.2010) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002)) (internal quotations omitted). Where plaintiffs are "unified by a common legal theory ... and by common facts," the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y.2005). The common issues that unite plaintiffs and the class—defendants' practices of failing to pay minimum wage and overtime—predominate and are subject to the same generalized proof because plaintiffs and the class members shared similar duties and were subject to the same practices. Plaintiffs satisfy the predominance requirement.

 Rule 23(b)(3) also requires that a class action be a superior method to individual litigation. The Rule sets forth factors for the Court to consider in determining whether the superiority requirement is met, including the class members' interests in individually controlling separate actions, the extent and nature of any litigation already begun, the desirability of concentrating litigation in a particular forum, and the difficulties in managing a class action. Fed.R.Civ.P. 23(b)(3)(A)-(D). Class counsel argues that certification of the class conserves judicial

time and resources. *See* Ambinder Decl. at ¶ 24. (ECF No. 75–2.) The alternative to a class would be the maintenance of many separate actions which could result in conflicting standards. Most notably, the individual claims, while providing a meaningful recovery for each plaintiff, are not so large that plaintiffs would be able to pursue redress absent class treatment. *See e.g. D'Arpa v. Runway Towing Corp.*, 12 CV 1120, 2013 WL 3010810, at *22 (E.D.N.Y. June 18, 2013) (superiority requirement met where individual suits would be prohibitively costly related to the value of the claims and class action would avoid inconsistent judgments). Further, while a separate action was initiated, that case was dismissed pursuant to this proposed settlement. The superiority requirement is satisfied.

### B. *Adequacy of Notice to Class*

■■■■ The court must "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R.Civ.P. 23(e)(1). By Order dated November 3, 2014, the Court preliminarily approved plaintiffs' proposed Notice, finding that the Notice "is appropriate" and "fully complies with due process and Federal Rule of Civil Procedure 23." *See* Preliminary Approval Order p. 1–3. As previously discussed, the Notice and Claim Forms, written in both English and Spanish, were mailed to 109 class members. *See* Ambinder Decl. at ¶ 4 (ECF No. 86–2.) The Notice was also posted at defendants' place of business and published in a Spanish language newspaper. The Notice sufficiently explained the settlement and informed potential class members of their available options. The Court confirms its prior approval of the Notice. The Notice was fair and adequate in both form and content to apprise possible class members of the settlement and to satisfy the requirements of the federal rules and of due process.

### C. *Approval of the Settlement Agreement*

■■■■ As settlement of a class action binds class members, it must be approved by the court "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2). The district court must determine that the class action settlement is "not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.2000). In making this finding, the Court must consider both procedural and substantive fairness. *See e.g. Massiah v. MetroPlus Health Plan, Inc.*, 11 CV 5669(BMC), 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012); *Willix v. Healthfirst, Inc.*, 07 CV 1143(ENV)(RER), 2011 WL 754862, at *2 (E.D.N.Y. Feb. 18, 2011). To determine procedural fairness, the court evaluates the negotiation process leading to settlement. *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001). To determine substantive fairness, the court evaluates whether the terms of the settlement are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974) ("the *Grinnell* factors"), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir.2000).

■■■■ While the Court must evaluate procedural and substantive fairness, it does so in light of the "strong judicial policy favoring settlements" of class action suits. *Wal–Mart Stores*, 396 F.3d at 116. "Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05 CV 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

#### a. *Procedural Fairness*

■■■■ There is "a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards–Cantave*, 588 F.3d 790, 803 (2d Cir.2009) (quoting *Wal–Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted)). This presumption "is consistent with the 'strong judicial policy in favor of settlements, particularly in the class action context.'" *Id.* The parties engaged in lengthy negotiations over

an extended period of time as well as extensive discovery in both actions covered by this settlement. *See* Memo of Law in Support of Pls.' Mot. for Prelim. Approval, p. 5 (ECF No. 75-3.) The settlement is procedurally fair, adequate, and not a product of collusion.

### b. *Substantive Fairness*

 The *Grinnell* factors provide the analytical framework for the Court to evaluate the substantive fairness of a class action settlement. The factors are:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a best possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463 (internal citations omitted).

In the instant litigation, all *Grinnell* factors strongly weigh in favor of approving the Settlement Agreement. First, litigation through trial would be complex, expensive, and long. While the settlement provides class members the back wages they are entitled to, the amounts are likely too small for each member to afford to adequately pursue his or her claim in separate litigation. Second, no class members have opted out of the settlement, nor have any class members objected to the settlement. Class counsel states that they have "communicated with a number of the members of the Class prior to settlement, including the Named Plaintiffs" and "these individuals indicated that the proposed settlement was fair." Ambinder Decl. at ¶ 10 (ECF No. 86-2). "The fact that the vast majority of class members neither objected to nor opted out is a strong indication"

of fairness. *Wright v. Stern*, 553 F.Supp.2d 337, 344–45 (S.D.N.Y.2008). Additionally, as a result of class counsel's efforts, the 22 class members filing claims constitute a 20% participation rate.[8] This participation rate is well above average in class action settlements. *See* 2 McLaughlin on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10–15 percent range.").

The third factor ensures that "counsel had an adequate appreciation of the merits of the case before negotiating." *Prasker v. Asia Five Eight LLC*, 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir.2004)); *see also Velez v. Majik Cleaning Serv., Inc.*, 03 CV 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Plaintiffs' counsel conducted extensive discovery in this case, as well as the related *Limon* action. This included investigation and legal research into the merits, likely damages, and affirmative defenses, interviewing plaintiffs and class members, and analyzing documents turned over by defendants. *See* Memo of Law in Support of Pls.' Mot. for Prelim. Approval, p. 8 (ECF No. 75-3).

As to the fourth and fifth factors, plaintiffs here would face substantial risks in establishing defendant's liability and damages at trial. As defendants did not keep accurate records of the hours worked by all plaintiffs, plaintiffs would be required to prove the amount of hours they worked through testimony. Amplifying this difficulty is the unavoidable reality that plaintiffs are primarily immigrants who do not speak English and who, according to class counsel, "are intimidated by the possibility of a trial." *Id.* at p. 9.

The risk of obtaining and maintaining class status also weighs in favor of final approval. Defendants have indicated that they would likely oppose a motion to certify a class and, should plaintiffs succeed in certification, appeal the Court's determination. Even if

---

8. Twenty-two (22) class members filed notices of claim in response to class counsel's mailing of 109 notices: A return rate of 20.18%. Even based on counsel's estimates that the potential class of all eligible employees during the time period may be as many as 150 people (including former employees for whom defendants did not have mailing addresses), the claimants represent 14.6% of that number—a participation rate within the average range.

plaintiffs were ultimately successful, the process would increase the cost of litigation and cause substantial delay. For many claimants, as many as four to seven years have already passed since they performed the work for which they allege they are entitled to compensation.[9]

The seventh factor, the defendants' ability to withstand a greater judgment, is either neutral or weighs in favor of settlement. While the defendants may be able to withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86. Class counsel does not opine on whether defendants are capable of withstanding a greater judgment. However, during the pendency of this action, Mercury Delivery Services, one of the defendants in the *Limon* action and a party to the Settlement Agreement, filed for bankruptcy. Further, the settlement provides for Iyad Saleh, a named defendant in the *Limon* action, to personally guarantee the settlement fund. Therefore, while it is not clear if defendants would be able to withstand a greater judgment, resolution of these two actions through one settlement class clearly benefits all plaintiffs by increasing the likelihood of collection from the solvent defendants.

The eighth and ninth factors both evaluate the reasonableness of the settlement amount. The determination of the reasonableness of a particular settlement amount "does not involve the use of a 'mathematical equation yielding a particularization sum.' " *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y.2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 178 (S.D.N.Y.2000)). Rather, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.1972). Further, when a "settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative

payment of a hypothetically larger amount years down the road,' " settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 05 CV 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. March 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, 01 CV 11814(MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)). As previously discussed, claimants here will benefit from immediate payment of back wages owed from more than four years ago. The eighth and ninth factors weigh in favor of final approval of the settlement. Taking all of the *Grinnell* factors into account, the Court concludes that the settlement is substantively fair. Accordingly, the class Settlement Agreement is approved.

### D. Service Awards

The Court finds the service awards of $7,500 to each of the *Hernandez* plaintiffs and $2,500 to each of the *Limon* plaintiffs reasonable. These amounts are to be paid from the Fund. The named plaintiffs actively participated in discovery and, in the case of the *Limon* plaintiffs, appeared at a hearing before Judge Weinstein. "Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Massiah*, 2012 WL 5874655, at *8 (collecting cases approving service awards ranging from $5,000 to $30,000).

### E. Attorney's Fees and Costs

On November 3, 2014, the Court appointed Virginia & Ambinder, LLP as Class Counsel as counsel met all the requirements of Federal Rule of Civil Procedure 23(g). Class counsel performed substantial work investigating, prosecuting, and settling plaintiffs' and the class members' claims. Class counsel has substantial experience prosecuting and settling wage and hour actions and is well-versed in this area of law as well as in class action law. *See Velez*, 2007 WL 7232783, at *8 (holding that Virginia & Am-

---

9. *See* Pls.' Mot. for Final Approval of the Settlement. Ex. D (ECF No. 86–5) for a breakdown of the time period in which claimants allege unpaid wages.

binder's "experience representing plaintiffs in class actions" supported the fee award).

 Class counsel requests $170,000 in fees and costs, which represents approximately 31% of the entire $550,000 Settlement Fund. Ambinder Decl. at ¶ 13 (ECF No. 86-2). The "percentage-of-recovery" method is consistent with the "trend in this Circuit." *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir.2010); *Wal-Mart Stores*, 396 F.3d at 121; *Willix*, 2011 WL 754862, at *6 (collecting cases adopting the percentage-of-the-fund method). Public policy favors a common fund attorneys' fee method in wage and hour class action litigation. *See Frank*, 228 F.R.D. at 189.

The Court must still scrutinize class counsel's attorney fee application to determine if the requested fees are "reasonable." Fed. R.Civ.P. 23(h). Class Counsel provides contemporaneous time records in order for the Court to determine the reasonableness of the requested fee by cross checking it against the lodestar method. *See e.g. Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 ("[W]e encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."). The lodestar method, obtained by multiplying the hours worked by the current hourly rates provided by the firm, provides a useful baseline measure. *Id.* Class counsel provides a total lodestar calculation of $190,350.78, inclusive of costs and fees from this action as well as the *Limon* action. Ambinder Decl. at ¶ 15 (ECF No. 86-2). The requested fee, based on the percentage of the fund, thus falls below the calculated lodestar, even without applying any lodestar multiplier. *See Goldberger*, 209 F.3d at 47 ("[T]he district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys."); *see e.g. Reyes v. Altamarea Group, LLC*, 10 CV 6451(RLE), 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) (approving fees based on a percentage-of-the-fund approach where "Class Counsel are not seeking a lodestar multiplier, as the hours they expended on the litigation result in a lodestar that is higher than the [amount] they seek."). Further, class counsel's application is inclusive of costs. Class counsel's request for attorney's fees and costs is reasonable. Counsel's request for fees and costs in the amount of $170,000 is granted.

## III. *CONCLUSION*

Plaintiffs' motion for final certification of the settlement class and for approval of the class action settlement is granted. Plaintiffs' motion for service awards for the *Hernandez* and *Limon* plaintiffs is granted. Plaintiffs' motion for attorneys' fees and costs in the amount of $170,000, to be paid from the Settlement Fund, is granted.

The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement. This Opinion and Order shall constitute the "Final Order" under Section 1(*l*) of the Settlement Agreement. The Court approves the release of the state law claims, which shall be binding on all class members. The Court approves the release of the FLSA claims, which shall be binding only on class members who filed a Notice of Claim pursuant to the Settlement Agreement. *See* Settlement Agreement at § 3(a). (ECF No. 86-7.) Without affecting the finality of this Final Order, the Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and all other court orders relevant to effectuating the terms of the settlement.

This case is dismissed with prejudice. The Clerk of the Court is requested to enter judgment and to close this case.

SO ORDERED.