17-0616
<u>Jamil v. SPI Energy Co., Ltd.</u>

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of November, two thousand seventeen.

PRESENT:  DENNIS JACOBS,
　　　　　　 ROBERT D. SACK,
　　　　　　 BARRINGTON D. PARKER,
　　　　　　　　 <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - -X
TAIMUR JAMIL,
　　　　　 <u>Plaintiff-Appellee</u>,

　　　　　 -v.-                                                17-0616

SPI ENERGY CO., LTD.,
　　　　　 <u>Defendant-Appellant</u>.

- - - - - - - - - - - - - - - - - - - - -X

1

FOR APPELLANT:                                  KUUKU MINNAH-DONKOH,
                                                Gordon Rees Scully Mansukhani,
                                                LLP, New York, NY.


FOR APPELLEE:                                   JAY B. ZIMNER (Neal S. Sobshinsky,
                                                on the brief), Zimner Law PC, New
                                                York, NY.


Appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, <u>J</u>.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED**.

SPI Energy Co., Ltd. ("SPI"), appeals the judgment of the district court determining the value of restricted stock.  SPI argues that the district court (1) improperly relied on actual economic conditions in light of hindsight and (2) should have applied a minimum 30% discount rate to the restricted shares. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

In November 2016, the district court ruled on summary judgment that SPI breached an employment contract with Taimur Jamil by failing to transfer three blocks of shares upon his termination: 35,000 sign-on shares and 260,000 miscellaneous shares (on April 16, 2015) and 180,000 time-based shares (on November 3, 2015).  The parties stipulated to the over-the-counter share price on the dates of breach ($2.01 on April 16, 2015 and $1.87 on November 3, 2015) and to the length of the respective statutory and contractual restrictions.  The only issues before the district court were the discount to be applied to the restricted stock, and the resulting damages.

Under New York law, once "the non-breaching party has proven the *fact* of damages by a preponderance of the evidence, the burden of uncertainty as to the amount of damage is upon the wrongdoer."  <u>Process Am., Inc. v. Cynergy Holdings, LLC</u>, 839 F.3d 125, 141 (2d Cir. 2016) (citation and quotation marks

omitted) (emphasis in original). Generally, the market value of restricted stock should be discounted to account for decreased marketability. <u>See</u> <u>Simon v. Electrospace Corp.</u>, 28 N.Y.2d 136, 147 (1971).

SPI made no attempt to establish the appropriate discount rate. SPA-8-10 (Op. and Order at 6-8). Without the benefit of expert testimony, the district court adopted the following methodology:

> Based on [the] undisputed information -- and in the absence of any other further information, as a result of the parties' joint decision to forgo a bench trial -- a reasonable estimate of the rate at which the restrictions (which were solely short-term time restrictions) affected the value of the securities on the dates of breach would be to assume that the value of Solar Power's unrestricted common stock was falling steadily at that rate -- which works out to seven-hundredths of a cent per day -- and to multiply that rate by the relevant holding period. This method reasonably approximates the sole effect of the restrictions in forcing plaintiff (if he had received the stock) to hold the securities over a period of time when their value was declining in accordance with the stipulated market prices.

SPA-10. Applying this reasoning, the district court found that Jamil's damages totaled $736,385.00, exclusive of interest and a stipulated severance, and entered judgment accordingly. SPA-12.

"Although the amount of recoverable damages is a question of fact, the measure of damages upon which the factual computation is based is a question of law." <u>Oscar Gruss & Son, Inc. v. Hollander</u>, 337 F.3d 186, 196 (2d Cir. 2003) (citations and quotation marks omitted).

New York courts reject calculating damages on the basis of what the "actual economic conditions and performance were in light of hindsight." <u>Id.</u>; <u>see also</u> <u>Sharma v. Skaarup Ship Mgmt. Corp.</u>, 916 F.2d 820, 826 (2d Cir. 1990). SPI argues that the district court erred in its valuation of the 475,000 shares because it used hindsight and actual economic conditions to determine the discount.

However, we do not need to decide whether SPI is correct because SPI failed to make this argument to the district court.  See App. 195-201 (Def. Mem.). "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."  In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 132 (2d Cir. 2008) (citation and quotation marks omitted).  The "court has discretion to consider arguments waived below," and will exercise that discretion "where necessary to avoid a manifest injustice."  Id. at 133.  But "the circumstances normally do not militate in favor of an exercise of discretion to address . . . new arguments on appeal where those arguments were available to the [parties] below and they proffer no reason for their failure to raise the arguments below."  Id. (citations and quotation marks omitted) (alterations in original).

Judge Rakoff indicated at the conclusion of oral argument on January 6, 2017 that he was considering applying a methodology on the basis of the stipulated share prices: "I am inclined to think I have a basis for computing the discount based on what the change in price was.  I am saying that out loud, not making a holding."  App. 302.  Counsel for SPI did not invoke the New York damages rule at that time, and failed thereafter to raise it by letter or motion before the Opinion and Order was issued on January 31, 2017.  Because SPI had notice of the district court's reasoning and waived the argument by failing to raise it, we decline to exercise our discretion to hear the argument now.  Accordingly, the district court's methodology stands.

SPI attempts to satisfy its burden of proving the discount rate by pointing to several cases that found 30% to 35% to be an appropriate range; but none are controlling.  For example, Waxman v. Envipco Pickup & Processing Servs., Inc., No. 02-cv-10132 (GEL), 2006 WL 1788964, at *4 (S.D.N.Y. June 28, 2006), and BrandAid Mktg. Corp. v. Biss, No. 03-cv-5088 (WHP), 2008 WL 190494, at *5 (S.D.N.Y. Jan. 22, 2008), both calculated a 30% to 35% discount rate on restricted shares.  However, Waxman states that "the precise discount that applies in any particular case, including this one, depends on the facts of that case, including expert testimony on the question of the proper discount amount considering the characteristics of the company at issue and the precise nature of the restrictions involved."  2006 WL 1788964, at *4.  BrandAid Mktg. Corp. notes that some courts have found 30% to 35% to be a "starting point" for valuing restricted

4

shares, but then quotes <u>Waxman</u> to the effect that the analysis depends on the facts of each case, including expert testimony. 2008 WL 190494, at *5.

Indeed, all of the authorities cited by SPI that apply a discount rate between 30% and 35% are informed by expert testimony or state that the discount rate depends on the facts and circumstances of each case. <u>See</u> <u>Holmes v. Bateson</u>, 583 F.2d 542, 563 (1st Cir. 1978) (noting that appellants' expert had applied a 30% discount to unregistered stock that could not be sold on the open market); <u>In re Colonial Realty Co.</u>, 226 B.R. 513, 523-24 (Bankr. D. Conn. 1998) (considering competing expert testimony and finding that applying a 35% discount to shares for lack of marketability is appropriate); <u>Mandelbaum v. Comm'r,</u> 69 TCM (CCH) 2852, 1995 WL 350881 (1995), <u>aff'd</u>, 91 F.3d 124 (3d Cir. 1996) (rejecting the expert opinions and conducting a multi-factor, fact-intensive inquiry to determine that a 30% marketability discount is appropriate); Russel T. Glazer, <u>Understanding the Valuation Discount for Lack of Marketability</u>, 75 THE CPA JOURNAL 60, 60 (2005) ("Valuation discounts are not automatic [] and their applicability and magnitude must be grounded in a careful analysis of the facts and circumstances of each case.").

In short, there is no support for SPI's assertion that a 30% discount is categorically appropriate for lack of marketability, and SPI may not rely upon the findings of other courts to satisfy its burden to prove the discount rate that should be applied in this case. As the district court stated, each party "gambled on who bears the burden of proving the discount rate, with each contending it was the other's responsibility." SPA-7 (Op. and Order at 5). This gamble implies that SPI was willing to accept the risk that it could receive *zero* discount if the district court held that SPI bears the burden of proof, as in fact it did. <u>Id.</u> It is not for us to relieve SPI from its miscalculated gamble, especially since SPI is fortunate that the district court applied any discount at all. We conclude that SPI's failure to sustain its burden is sufficient to justify affirming the district court's calculation of damages.

5

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK